## No. 13,905.

UNION PACIFIC RAILROAD COMPANY *v*. SPANO.

(59 P. [2d] 75)

Decided June 22, 1936.

Mr. C. C. DORSEY, Mr. E. G. KNOWLES, for plaintiff in error.

Mr. HAROLD TAFT KING, for defendant in error.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

AN action in damages for refusal of a common carrier to deliver a carlot shipment of grapefruit to the consignee. Delivery of the shipment, which arrived in Denver about 10:40 a. m. on a given date, could have been made within from fifteen minutes to two hours, as the consignee demanded, but was refused by the carrier during business hours of that day, equivalent to withholding delivery until the following day. In consequence, the market declining, the consignee suffered a damage of $25, for which plus $11.90, predicated otherwise, judgment was given. The $25 item is challenged on the theory that an agreement previously entered into by all Denver delivering railroads to the effect that freight of the character involved arriving after 7 a. m. shall not be delivered before 5:30 p. m. of the same day, works the carrier's absolution.

▆▆▆ It is elemental, in the circumstances here, that the carrier was bound to convey the shipment to its destination and make delivery to the consignee on reasonable demand during business hours, failing which, actionable negligence is to be imputed, with consequent liability for loss due to decline of market during retention of the shipment, which loss constitutes the measure of damages. See 10 C. J., 285, §404; *Burr v. Adams Express Co.*, 71 N. J. L. 263, 58 Atl. 609; 1 Michie on Carriers, 511, §835; *Toledo, St. L. & W. R. R. Co. v. Beery*, 31 Ind. App. 556, 68 N. E. 702; *Stevens v. Northern Central Ry. Co.*, 129 Md. 215, 98 Atl. 551; *Denver & R. G. R. R. Co. v. De Witt*, 1 Colo. App. 419, 29 Pac. 524.

▆▆▆ But, while neither suggesting any physical fact preventing delivery in accordance with the consignee's demands, nor questioning the measure of damages adopted, the carrier contends that in view of its agreement with other railroads serving Denver, it is relieved from performing what otherwise would have been its duty; in any event until and unless the Interstate Commerce Commission, having sole jurisdiction to pass thereon, as it is said, shall have determined that the

agreement is unreasonable, the court may not adjudge the merits of the controversy. It is to be observed that the consignee was not a party to the contract, neither did he introduce it to the litigation. Did its introduction by the offending party in this recognized common-law action invoked by the consignee, clearly maintainable at the threshold, operate to still jurisdiction obtaining until such exhibition, or stay the court's progress while the Interstate Commerce Commission, acting in some undefined proceeding—the burden of presentation to be the consignee's not the carrier's—considered the reasonableness of the contract as it affects the matter in litigation? We are not persuaded in the affirmative. It will be noted that the action does not present any element of delay in transportation, discussed by counsel. The shipment arrived timely and unimpaired. Rules as to rates, manner of shipment, and the like, are not of kind with the question before us, and cases interpreting such rules are unenlightening. Here, the carrier had performed its every active duty, and its passive duty to permit the consignee to possess his property, already at hand, was interrupted by its agents' will to that end. We cannot think the carrier's attitude was reasonable, nor was it made so by an agreement with other carriers binding all to identical treatment of shippers and consignees. The trial court rightly met the challenge to its jurisdiction and righteously resolved the controversy. Let the judgment be affirmed.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, who did not participate. MR. JUSTICE BOUCK dissents.